IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHATHAM CAPITAL MANAGEMENT IV, LLC, a Georgia limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>MUSE PAINTBAR, LLC, a Delaware limited liability company; MUSE TRIBECA, LLC, a Delaware limited liability company; and MUSE HOLDINGS, LLC, a Delaware limited liability company<br><br>    Defendants. | Civil Action No._____ |

**COMPLAINT FOR BREACH OF CONTRACT AND
FOR APPOINTMENT OF A RECEIVER**

**SUMMARY OF CASE**

Muse Paintbar, LLC ("**Muse**") is 100% owned by Muse Holdings, LLC ("**Holdings**") and owns 100% of Muse Tribeca, LLC ("**Tribeca**", and together with Holdings, each individually and collectively, a "**Guarantor**"; the Guarantor and Muse, each individually and collectively, the "**Defendants**" or "**Company**"). The Company's business model combines painting instruction with food service with approximately thirty-one locations operating in nine states: Connecticut, Massachusetts, Maryland, Maine, New Hampshire, New York, Pennsylvania, Rhode Island, and Virginia. The Company employs over 300 employees. Defendants are in default on approximately $13.9 million of indebtedness due and owing to its primary lender Chatham Capital Management IV, LLC ("**Chatham**")[1]. Chatham holds a first lien on substantially all of Defendant's assets.

---

[1] Chatham serves as Agent, Administrative Agent and Collateral Agent (collectively, "**Agent**") for the secured party, via assignment, EAD, LLC, a Georgia LLC.

34153273 v3

The Affidavit of Lin Wang ("Wang Affidavit"), being filed substantially contemporaneous herewith, authenticates and attaches many of the documents referred to herein and is incorporated herein by reference in its entirety as if fully set forth herein.

Chatham believes it has given the Defendants ample opportunity to manage their operations but now seeks the appointment of a receiver to stave off further diminution of value. On June 21, 2019, Chatham gave Muse notice of its significant non-compliance, including the failure to make principal and interest payments on the Loans[2] and the failure to deliver audited financial statements as required. *Wang Affidavit*, Ex. #18. Thereafter, on July 18, 2019, Chatham notified Defendants of defaults. *Wang Affidavit*, Ex. #19. On July 29, 2019, Chatham gave notice that, on account of the previous and ongoing events of default as identified in the prior letters, Chatham declared Muse in default under the Loan Documents. *Wang Affidavit*, Ex. #20. Further, on August 19, 2019, Chatham accelerated the Loans and, as such, all obligations are due and payable in full. *Wang Affidavit*, Ex. #21. Lastly, on August 26, 2019, Chatham gave Defendants notice that the Obligations shall bear interest at the Post-Default Rate from the date of the earliest occurring Event of Default. *Wang Affidavit*, Ex. #25.

Chatham has determined the best path forward, for itself, the Defendants, and the Defendants' employees, is to seek the appointment of a receiver in order to allow the Company to continue operating without shutting down. This relief permits the Defendants' operations to continue without any interruption and provides a pathway for necessary cash infusions into the operations. Based upon non-payment of rent when due, the Company has received notices of default and eviction notices from various landlords. The Company will not be able to meet

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Loan Agreement.

September 1, 2019 rent obligations.  Further, Defendants failed to notify Chatham of a pending litigation that would have a Material Adverse Effect.  Moreover, an audit report by the Defendants own auditors, with a qualified opinion on going concern necessitated a restatement of the Company's financials, which reduced the Company's reported actual EBITDA from $4.2 million to $2.0 million.  The current owners are unable and/or unwilling to make the necessary cash infusions to adequately fund the Company as a going concern.  As such, time is of the essence.  Given the current management and defaults, Chatham is currently unwilling to advance funds to the Company, however Chatham would be willing to advance funds to a court-appointed receiver managing the operations.  During the pendency of the receivership, the Company's finances can be restructured and, once stabilized, the Company can continue to operate thereafter.   Chatham has consulted with Defendants regarding these concerns, and the Defendants agree with, and consent to, the appointment of Katie S. Goodman and GGG Partners, LLC as receiver over Defendants property, all or substantially all of which is Chatham's Collateral,  pursuant to the terms set forth in the proposed order attached to the Motion for Appointment of Receiver filed contemporaneously herewith.

## INTRODUCTION

Plaintiff, Chatham, and for its complaint seeking the payment of contractual debt and for the appointment of a receiver (this "**Complaint**") against Defendants.

As support for this Complaint, Chatham states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Chatham is a Georgia limited liability company.  Chatham's sole member is Chatham Credit Holdings, LLC, a Georgia limited liability company.  Chatham Credit Holdings,

LLC's sole member is Brian Reynolds, a Georgia citizen. Accordingly, for purposes of assessing diversity of citizenship, Chatham is a citizen of Georgia.

2. Tribeca is a Delaware limited liability company. Tribeca is 100% owned by Muse.

3. Muse is a Delaware limited liability company. Muse is 100% owned by Holdings.

4. Holdings is a Delaware limited liability company. Plaintiff has conferred with Defendants with regards to the citizenry of its membership interests. To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Holdings membership consists of the following:

   a. Ray Weaver, a citizen of Massachusetts.

   b. Stanley J. Finch, a citizen of New York.

   c. Jordan Bettman, a citizen of New York.

   d. Michael Bilger, a citizen of New York.

   e. Lola and Teddy's Big Investment Limited Liability Company, a New Jersey limited liability company whose members are Gary Bettman, a citizen of New Jersey, MJ Bas, a citizen of New York, and Matthew Brush, a citizen of New York.

   f. BF Partners, L.P. a Texas limited partnership with the following partners: Bruce Bilger, a citizen of Texas, and Brent Bilger, a citizen of California.

   g. Stanley F. Finch, a citizen of Texas.

   h. Howell M. Finch Trust, whose trustee and beneficiary are both citizens of Texas.

   i. Eliz Bas Marital Deduction Trust, whose trustee and beneficiary are both citizens of New Jersey.

   j. MJ Bas, a citizen of New York.

    k. Orchard Road Investments, LLC, a New Jersey LLC whose member is Gary Bettman, a citizen of New Jersey.

5. Plaintiff has conferred with Defendants with regards to the membership of Defendants. To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that the Defendants are citizens of Delaware, New York, New Jersey, Massachusetts, California and Texas for purposes of 28 U.S.C. § 1332, but no other purposes. None of the Defendants are a citizen of the same state as the Plaintiff.

6. This Court has original jurisdiction of this case pursuant to 28 U.S.C. § 1332(a) because the amount in controversy is greater than $75,000, exclusive of interests and costs, and complete diversity exists between Plaintiff, on the one hand, and Defendants, on the other.

7. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### I. BUSINESS OPERATIONS

8. The Company was founded in 2012 as a "paint bar" operator which is also referred to in this industry as a "paint and sip". The Company is among the largest paint bar operators in the United States and a dominant player in the Northeast.

9. The Company seeks to locate its stores in premium locations known for entertainment and dining that are adjacent to flagship brands with heavy retail traffic.

10. The Company offers, but is not limited to the following services:

- Painting classes;
- Painting parties;
- Corporate events;
- A selection of appetizers, dips and deserts as well as beers and wines

11. At present, Company manages approximately thirty-one locations in the United States with current plans to open three additional stores and close two existing locations.

12. Tribeca operates one store location at 329 Greenwich Street, New York, NY 10013. Muse operates the remaining locations. Holdings holds the membership interest to Muse.

13. The Company's chief executive office is listed as 379 West Broadway #301, New York, NY 10012. Upon information and belief, the Company's business is operated out of the Tribeca location in New York, New York.

14. The Company has never had a permanent CFO or Controller. While multiple individuals have attempted to service this functionality for the Company over the last two years, there has been significant turnover. To wit, (i) an interim CFO only lasted several months in 2018, (ii) another individual, Rob Morrison, hired in November 2018, either left or was terminated in July of 2019, (iii) the prior CEO, Stanley Finch, was terminated around June 2019, (iv) the Board brought back a co-founder, Ray Weaver to serve as CFO, who has only been on the job for two months. Suffice to say, the Company has lacked c-suite stability over the past eighteen months. The accounting functions have been outsourced to a third party book keeping firm, who performed certain accounting functions but never produced financials for the Company.

15. The Company's founders Ray Weaver and Stanley J. Finch hold the majority interest of the common stock in Holdings. Jordan Bettman, Stanley Finch, Ray Weaver and Michael Bilger constitute the board of directors of Holdings.

## II. **FINANCIAL DISTRESS**

16. The Defendants' audit report, issued by their auditor, Grassi & Co, with a qualified opinion on going concern, was received by Chatham on July 8, 2019. The audit report, among

other things, revealed a substantial restatement of the 2018 numbers which reduced the Company's reported actual EBITDA from $4.2 million to $2.0 million. *Wang Affidavit*, Ex. #24.

17. Furthermore, the internal financial statements were not in compliance with GAAP as required by the Loan Documents.

18. The Defendants' financial deterioration has accelerated recently.

19. Muse failed to make its regularly scheduled principal and interest payments to Chatham due June 10, 2019.

20. Muse failed to make its regularly scheduled principal and interest payments to Chatham due July 10, 2019.

21. Muse failed to make its regularly scheduled principal and interest payments to Chatham due August 10, 2019.

22. A summary of the outstanding leases was prepared by Defendants Chief Restructuring Officer, James Katchadurian of CR3 Partners LLC (the "**Lease Summary**"). *Wang Affidavit*, Ex. #26.

23. Upon information and belief, no lease payments which were due in July or August were made when due. [3]

24. As outlined in the Lease Summary, some landlords have sent default notices and eviction notices to Defendants. *Wang Affidavit*, Ex. #26.

25. Furthermore, a profitable business locations, Manchester, received a Landlord and Tenant Writ on or about August 5, 2019 which required a response on August 26, 2019. *Wang Affidavit*, Ex. #27-28.

---

[3] Upon information and belief, approximately twelve past due July rent payments were late paid in August.

26. Upon information and belief, Muse is unable to pay rents due on September 1, 2019.

27. Upon information and belief, the owners of Defendants are unable and/or unwilling to make the necessary cash infusions to adequately fund the Company.

28. At least one creditor has obtained a judgment against Muse. *Wang Affidavit*, Ex. #22.

29. The Company's financial distress is becoming widely known to at least the employees and lessors and a failure to act expeditiously will be catastrophic to the going concern value of the Company.

30. The Company's constituencies need to be assured that the business will be open for the near term and have the operations in place to remain in business for the long term.

### III. COMPANY'S FINANCIAL OBLIGATIONS TO CHATHAM

A. The Loans

31. Chatham has had a longstanding financial relationship with the Company. Chatham has financed Muse since November 2017. Chatham, as Muse's senior secured lender, obtained a senior perfected security interest in all or substantially almost all of Muse's assets as well as the assets of the Guarantors (collectively, the "**Collateral**"), as described in further detail below. In connection with this financial relationship, Chatham made certain loans to Muse (collectively, the "**Loans**"), as further described below.

i. **The 2017 Loan**

32. On or about November 29, 2017, Chatham made a loan to Muse in the stated principal amount of $9,000,000.00, as evidenced by that certain Loan Agreement dated November 28, 2017 between Chatham and Muse (as amended or modified from time to time, the "**2017 Loan Agreement**"). *Wang Affidavit*, Ex. #1. The 2017 Loan Agreement evidences a $6,000,000.00 term

loan and $3,000,000.00 multi-draw term loan available to Muse pursuant to which Chatham agreed, from time to time, to provide loans to Muse and certain of its wholly-owned subsidiaries for the operation of a paint bar business, pursuant to:

    a. Term Note dated November 29, 2017 from Muse to Chatham *Wang Affidavit*, Ex. #2);

    b. Pledge and Security Agreement dated November 29, 2017 between Chatham and Muse (*Wang Affidavit*, Ex. #3);

    c. Joinder Agreement dated December 12, 2017 given by Holdings (*Wang Affidavit*, Ex. #4);

    d. Security Agreement Supplement dated December 12, 2017 given by Muse Holdings (*Wang Affidavit*, Ex. #5);

    e. Assignment for Security – Trademarks, Patents and Copyrights dated November 29, 2017 from Muse to Chatham (*Wang Affidavit*, Ex. #6);

    f. Liquor License Agreement from Muse (*Wang Affidavit*, Ex. #7)

    g. Deposit Account Control Agreement by and between Chatham, Muse and People's United Bank, N.A. (*Wang Affidavit*, Ex. #8);

    h. UCC-1 Financing Statement given by Tribeca (*Wang Affidavit*, Ex. #10);

    i. UCC-1 Financing Statement given by Muse (*Wang Affidavit*, Ex. #9); and

    j. UCC-1 Financing Statement given by Holdings (*Wang Affidavit*, Ex. #11).

collectively, the "**2017 Loan Documents**".

    ii.    **The 2018 Loan**

33. On or about December 21, 2018, Chatham made additional loans available to Muse in the principal amount of $12,000,000.00, as evidenced by that certain Amended and Restated

Loan Agreement dated December 21, 2018 between Chatham and Muse (as amended or modified from time to time, the "**2018 Loan Agreement**" and together with the 2017 Loan Agreement, the "**Loan Agreement**"). *Wang Affidavit*, Ex. #12. The 2018 Loan Agreement made available a multi-draw $12,000,000.00 term loan to Muse for the operations of its business, evidenced by:

    a. Additional Term Note dated December 21, 2018 from Muse to Chatham (*Wang Affidavit*, Ex. #13);

    b. Amended and Restated Liquor License from Muse (*Wang Affidavit*, Ex. #14);

    c. Ratification Agreement by Defendants (*Wang Affidavit*, Ex. #15); and

    d. Deposit Account Control Agreement with JP Morgan (*Wang Affidavit*, Ex. #23).

collectively, the "**2018 Loan Documents**".

    **B.**    **Stock Owned by Chatham**

34. On or about December 21, 2018, Muse issued Chatham the Warrant allowing Chatham to purchase up to five percent (5%) of the membership units of Muse Holdings, LLC at an Exercise Price of $0.001 per unit (the "**Warrant**"). (*Wang Affidavit*, Ex. #16) In connection with the issuance of the Warrant, Chatham and Muse entered into that certain Warrantholder Rights Agreement dated December 21, 2018 detailing Chatham's rights under the Warrant (the "**Warrantholder Rights Agreement**") (*Wang Affidavit*, Ex. #17);. Chatham has not exercised its purchase rights under the Warrant.

    **C.**    **UCC Filings**

35. Appropriate financing statements covering the personal property collateral are also filed with the various filing offices (the "**UCC Financing Statements**"). *Wang Affidavit*, Exs. 9-11.

36. The UCC Financing Statements, 2017 Loan Documents, 2018 Loan Documents, Warrant, and Warrantholder Rights Agreement, together with all other documents and instruments evidencing and/or securing or relating to the Loans, are referred to herein as the "**Loan Documents**".

D. **Existing Defaults**

37. As set forth in notices duly delivered by Chatham to Defendants, the Defendants have been and remain in default under numerous sections of the Loan Documents (the "**Defaults**").

38. Based upon, *inter alia*, the Defaults, Chatham notified Muse that payment of all Loans and all other Obligations was accelerated and all Loans and all other Obligations were now due and payable in full. *Wang Affidavit, Ex. #21*.

39. The Defaults are continuing and have not been cured by Muse.

40. The total amount due and owing pursuant to the Loan Documents as of August 25, 2019, exclusive of expenses of collection and attorneys' fees, is principal in the amount of $13,184,300.51 plus accrued and unpaid interest in the amount of $538,178.25, plus default interest in the amount of $231,723.17 and unpaid expenses in the amount of $1,292.75 for a total amount of $13,955,494.68. Interest accrues daily at the default rate provided in the Loan Documents. Attorneys' fees and other costs of collection also continue to accrue. The principal amounts due, the unpaid interest, attorneys' fees and costs of collection are hereinafter collectively referred to as the "**Outstanding Indebtedness**."

## IV. CHATHAM'S REMEDIES UNDER THE LOAN DOCUMENTS

41. Chatham and its attorneys have had numerous conversations and communications with Company and their attorneys in an attempt to resolve their differences. Defendants made it clear during these discussions that they are presently unable to pay the Outstanding Indebtedness.

42. The Defaults entitle Chatham to exercise its rights and remedies under the Loan Documents.

43. As stated above, Muse is in substantial and continuing payment and covenant default to its senior secured lender Chatham for the Outstanding Indebtedness. As such, Guarantors are also in default.

## V. THE NEED FOR A RECEIVER

44. As evidenced by the multiple reservation of rights letters, Muse's operations would likely have already been closed and its cash flow extinguished, but for Chatham's repeated cooperation as Muse's senior secured lender.

45. Chatham wants the business to continue to operate but only under a stable, fiscally responsible business model that will allow the debt to Chatham to be repaid. At present, Muse's financial condition is unstable and untenable.

46. In order for the Collateral to remain viable and sustain its value and to prevent further harm to the business, a receiver is necessary to manage the business which comprises most of the Collateral. Additionally, a receiver may be needed to market the Collateral for a potential sale or sales to maximize the value of the Collateral as a going concern. Without a receiver to oversee the Collateral, Muse's financial inability to fulfill its responsibilities risks imminent cessation of operations and, once that occurs, the impact to the viability of the business is irredeemable. Such a shutdown would devastate the value of the Collateral.

47. Without a receiver to manage the Collateral, Chatham will continue to suffer substantial damages as the Collateral will decline in value.

48. The Collateral has earnings potential, but a receiver is necessary to stop the further deterioration of the value of the Collateral and to turn around the Defendant's financial condition.

49. The highest and best value of the Collateral appears to be as a going concern.

50. Muse was, is, and remains unable to cure the continuing Defaults to Chatham.

51. At least one creditor has obtained a judgment against Muse. *Wang Affidavit*, Ex. 22.

52. Chatham requests that the receiver have authority and control of all of the aspects of the Collateral in order to fully preserve the going concern value of the business and the Collateral, and Chatham's rights under the Loan Documents, all with due regard to the rights of creditors, Defendants and employees.

53. Chatham has consulted with Defendants regarding these concerns and the Defendants agree with and consent to the appointment of Katie S. Goodman and GGG Partners, LLC as receiver over Defendants pursuant to the terms set forth in the proposed order attached to the Motion for Appointment of Receiver filed contemporaneously herewith.

## COUNT ONE - BREACH OF CONTRACT

54. Chatham incorporates and realleges the preceding paragraphs as if fully set forth herein.

55. The Defendants are in default on their obligations to Chatham to pay in full all amounts due and owing under the Loan Documents, including interest, attorneys' fees and costs, and all other charges thereunder.

56. The Defendants have further failed to comply with certain financial covenants as required under the terms of the Loan Documents.

57. The Outstanding Indebtedness remains due and owing.

**WHEREFORE,** Chatham demands judgment against the Defendants for the Outstanding Indebtedness and costs, as well as such other, further, and different relief to which Chatham may be entitled and is just and proper in this action.

## COUNT TWO: APPOINTMENT OF RECEIVER IN EQUITY

58. Chatham incorporates and realleges all preceding paragraphs as if fully set forth herein.

59. The equitable considerations support the appointment of a receiver to manage and operate the Collateral. In light of the Defendants' ongoing payment defaults to Chatham, lease defaults to landlords and upcoming payroll requirements, it is clear that the Defendants do not have sufficient funds to pay the amounts due and owing under the Loans. Accordingly, if the Collateral is not preserved, Chatham and all other creditors of the Defendants will be left with no adequate legal remedy to redress the harm arising from the Defendants' breach of the Loan Documents. The potential harm to Chatham, as well as the employees and Muse's other creditors, outweighs any conceivable harm to the Defendants.

60. Time is of the essence.

61. Chatham offers to do equity.

62. In the event Chatham is not entitled to the appointment of a receiver as a legal remedy, then Chatham would have no adequate remedy at law.

**WHEREFORE**, Chatham demands judgment against the Defendants for the appointment of a receiver in equity, under terms substantially similar to those in the proposed order attached to

the Motion for Receiver filed contemporaneously herewith, as well as such other, further, and different relief to which Chatham may be entitled and is just and proper in this action.

Dated:  August 29, 2019

BURR & FORMAN LLP

By: /s/ *Richard A. Robinson*
Richard A. Robinson (No. 5059)
J. Cory Falgowski (No. 4546)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
Telephone: (302) 830-2300
Email:  rrobinson@burr.com
          jfalgowski@burr.com

- and –

Graham H. Stieglitz (*Pro Hac Vice Pending*)
Burr & Forman LLP
171 Seventeenth Street, N.W., Suite 1100
Atlanta, Georgia  30363
Telephone:  (404) 815-3000
Email:  gstiegli@burr.com

*Counsel for Chatham Capital Management IV LLC*